UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DONALD MOODY BRONCHEAU,<br><br>    Defendant. | Case No. 1:24-CR-00136-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

    Pending before the Court are the Government's Motion in Limine Regarding Reports Involving Minor Victim (ECF No. 48), the Government's Motion in Limine to Admit Forensic Interview of Minor Victim (ECF No. 56), and Defendant Donald Moody Broncheau's Motion to Introduce Evidence Under F.R.E. 412 (ECF No. 70). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

**INTRODUCTION**

    A superseding indictment charged Defendant Donald Moody Broncheau with one count of sexual abuse under 18 U.S.C. § 2242(3) and one count of sexual abuse of a minor under 18 U.S.C. § 2243(a) (ECF No. 52). The charges allege Broncheau sexually abused M.B. on September 4, 2023, on the Nez Perce Indian Reservation in Idaho. At the time of the alleged

1

incident, Broncheau was fifty-nine years old, and M.B. was thirteen. The alleged abuse occurred while M.B. was sleeping on a couch at Michele Fisher's home.

The Government has filed two motions in limine (ECF Nos. 48, 56). The first motion seeks to exclude the use of fifteen law enforcement reports which the Government produced in discovery and to preclude Broncheau from using those reports to impeach M.B. (ECF No. 48). Broncheau partially opposes the motion (ECF No. 64). He also moves to introduce one of the reports, an Idaho County Sheriff's Office incident report, dated September 28, 2023, under Rule 412(b)(1)(C) of the Federal Rules of Civil Procedure to show M.B.'s sexual activity (ECF No. 70). The Government's second motion seeks a pretrial ruling on the admissibility of two videos of a forensic interview of M.B., which was conducted ten days after the alleged events giving rise to this prosecution (ECF No. 56). Broncheau also partially opposes that motion (ECF No. 63).

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*; *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (explaining court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials"). The denial of a motion in limine to exclude certain evidence does not mean that the evidence will be admitted but only that the court is unable to make a comprehensive ruling in advance of trial. *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167

(D. Nev. 2014). Regardless of whether a court grants or denies a motion in limine, the court may "change its ruling at trial because testimony may bring facts to the court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

Relevant evidence is regularly excluded by the rules. *See, e.g.*, Fed. R. Evid. 404(b)(1) (barring character evidence to prove actions in conformity therewith); Fed. R. Evid. 608(b) (barring the admission of extrinsic evidence to attack truthfulness). At the same time, even when evidence is substantively inadmissible, certain facts may be admitted on cross-examination if probative of truthfulness. Fed. R. Evid. 608(b)(1). Courts are tasked with exercising reasonable control over witness examinations to seek the truth and to avoid embarrassment. Fed. R. Evid. 611(a). This task includes excluding relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or the presentation of needlessly cumulative evidence. Fed. R. Evid. 403.

Out of court statements offered for the truth of what they assert are generally hearsay, and hearsay is generally inadmissible. Fed. R. Evid. 801, 802. There are two types of out of court statements which, by definition, are not hearsay when certain conditions are met. The first is a testifying witness' prior statement; the second is an opposing party's statement. Fed. R. Evid. 801(d)(1), (2). Here, the former is at issue. Rule 801(d)(1) allows the admission of a witness' prior statement to (i) rebut inconsistent testimony, (ii) rehabilitate credibility; or (iii) identify a person. Additionally, hearsay statements may nonetheless be admitted if an exception applies, including the residual hearsay exception. Fed. R. Evid. 807.

A.     **Exclusion of Law Enforcement Reports**

The Government moves to prevent Broncheau from using fifteen law enforcement reports at trial to cross-examine or otherwise impeach M.B. (ECF No. 48). These reports are either "incident" or "call detail" reports which the Idaho County Sheriff's Office prepared; they are dated between October 2021 and November 2024; and each references the victim, M.B, in some manner (ECF Nos. 48-1 – 48-15). In support of its motion, the Government argues the reports are not "proper impeachment material" (ECF No. 48 at 2).

Broncheau partially opposes the motion, arguing that ten of the reports are "classic impeachment material."[1] Broncheau specifically addresses the following (briefly described) reports as impeachment material:

> ECF No. 48-1: Idaho County Sheriff's Office incident report; October 14, 2021. Reports of child abuse concerning M.B.'s father are made to law enforcement. In response, M.B.'s father tells police his children, including eleven-year-old M.B., are liars. The children are removed from the home.
>
> ECF No. 48-3: Idaho County Sheriff's Office incident report; August 23, 2023. Shortly before child protective services was to inspect her home, M.B. called the police. She reported her grandmother had assaulted her. Her grandmother reported M.B. had in fact been the assailant. M.B.'s grandmother, however, admitted to pushing M.B.
>
> ECF No. 48-4: Idaho County Sheriff's Office call detail; September 9, 2023. M.B.'s eleven-year-old sister called the police and reported M.B. was at Fisher's home. The report states M.B.'s father could be heard in the background "coaching" M.B.'s younger sister on what to say.
>
> ECF No. 48-5: Idaho County Sheriff's Office incident report; September 28, 2023 (plus addendums). Officer responds to M.B.'s home to investigate her failure to appear at school and her involvement with underage sexually explicit material. The report notes M.B. was found at Fisher's house.

---

[1] Broncheau does not dispute that five of the reports should be excluded, including ECF Nos. 48-2, 48-9, 48-13, 48-14, and 48-15. Broncheau, however, reserves his right to revisit the issue (ECF No. 64 at 1, n.1). Accordingly, the Court provisionally excludes these reports from trial.

>ECF No. 48-6: Idaho County Sheriff's Office incident report; October 10, 2023. A probation check revealed extremely unsafe and unsanitary living conditions at M.B.'s home and her father's drug use. M.B. was found asleep on Fisher's couch.
>
>ECF No. 48-7: Idaho County Sheriff's Office call detail; October 16, 2023. This report explains M.B.'s custodial living situation after being removed from her home; her aunt's request that M.B. leave; and her father's verbal abuse.
>
>ECF No. 48-8: Idaho County Sheriff's Office call detail; January 20, 2024. This report indicates an individual called police to report trespassers around his shop. M.B. and three other children were told to disperse and did so.
>
>ECF No. 48-10: Idaho County Sheriff's Office incident report; September 6, 2024. M.B.'s younger sister reported to the police that M.B. had punched her father, who had been using drugs or "tweaking." M.B.'s grandmother reports the children were yelling at their father because he asked them to clean the house.
>
>ECF No.48-11: Idaho County Sheriff's Office incident report; September 19, 2024. This report indicates M.B. had allegedly circulated a photograph of sexually explicit underage material because the victim was on her "bad side." M.B. was required to delete the photograph from her phone, and no charges were brought.
>
>ECF No. 48-12: Idaho County Sheriff's Office incident report; September 30, 2024. This report indicates M.B. had a "hit list," was going to "shoot up the school," and would be obtaining a gun from another student.

The first two reports are dated before the alleged incident in this case occurred on September 4, 2023, and the remaining reports are dated after the incident.

Broncheau argues these reports "raise substantial doubt as to M.B.'s credibility" and "bear directly on instances of untruthfulness, M.B.'s motivations, and incentives to exaggerate or fabricate" (ECF No. 64 at 8). Further, Broncheau argues that "the reports carry impeachment value individually *and as a pattern*" (*id.*). To avoid revealing his trial strategy, Broncheau argues generally that M.B.'s "credibility is a central issue" and that he has "the right to cross-examine witnesses concerning their motive under the confrontation clause" (*id*. at 6-7). Most specifically, Broncheau argues M.B.'s "lengthy, varied, and ongoing involvement with law enforcement, both prior to and after the allegation in this case, suggests multiple credibility issues" (*id.* at 8).

The Supreme Court has recognized the right of confrontation includes an opportunity to effectively cross-examine witnesses against a defendant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 678-79. Likewise, the Confrontation Clause protects the right to engage in cross-examination that might reasonably lead a jury to question the witnesses' reliability or credibility. *Gibbs v. Covello*, 996 F.3d 596, 601 (9th Cir. 2021). Regardless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. The Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

The Court disagrees with Broncheau that M.B.'s "ongoing involvement" with law enforcement suggests she has credibility issues. Further, the Court disagrees the reports might reasonably lead a jury to conclude M.B. is not credible or has a motive or incentive to fabricate the truth about Broncheau's alleged conduct. None of the reports relate to Broncheau or to sexual abuse or suggest M.B. has previously lied about sexual abuse. Although some of the reports reflect differing versions of unrelated events which law enforcement investigated, none of those reports definitively conclude what occurred or that M.B. lied.

Further, because various witnesses provide differing accounts of some of the investigated incidents, those reports do not provide a jury any basis to conclude whose version of those events is accurate or that M.B. lied to law enforcement about them. To the extent other reports do not

raise differing versions of the events, they are irrelevant to the issues in this case. For example, M.B.'s school attendance issues and her interactions with her peers at school does not make any fact of consequence in this case more or less probable. *See* Fed. R. Evid. 401

Finally, the Court disagrees with Broncheau's suggestion that the reports show M.B. has a motive to be untruthful about Broncheau or otherwise. In support of this suggestion, Broncheau cites *Bridges v. Beard*, 941 F. Supp. 2d 584, 606 (E.D. Pa. 2013), *as amended* (May 1, 2013), *aff'd sub nom. Bridges v. Sec'y of Pennsylvania Dep't of Corr.,* 706 F. App'x 75 (3d Cir. 2017). That case, however, is distinguishable. In *Bridges*, the defendant was sentenced to death for a murder and subsequently petitioned for habeas relief alleging a *Brady* violation because the prosecution withheld law enforcement reports suggesting that Robles, a key witness against the defendant, was biased. *Id.* at 605. The court ruled that the withheld documents "suggest that Robles may have had a motivation to lie to curry favor with the police to protect his drug business and to stay out of police custody" and that "the evidence shows Robles' willingness to provide police with the information when he was confronted with his own misdeeds." *Id.* at 605, 607. As a result, the court held that the law enforcement reports about Robles, which the prosecution withheld, were favorable and material to the defendant, who was entitled to habeas relief for the *Brady* violation. *Id.* at 609.

In contrast, nothing in any of the incident or call detail reports here suggests M.B. was motivated to lie to law enforcement, either to protect her own interests or to avoid the consequences of her own misdeeds. Unlike Robles' motive in *Bridges*, there is no quid pro quo factor motivating M.B. when she was interacting with law enforcement. In other words, M.B. does not appear to be garnering any benefit with law enforcement by reporting or testifying about Broncheau's alleged conduct.

Because the reports are not probative of M.B.'s motive or credibility, using the reports (and their contents) runs a significant risk of unfair prejudice, confusion, and misleading the jury. This risk is particularly high if Broncheau were to use all the reports, as he proposes, to establish an alleged "pattern." Likely, this risk remains even if Broncheau were to use any one of the reports because the investigated incidents bear no relationship to Broncheau's alleged conduct at issue in this case. *See United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006) (noting admission of evidence triggering "mini-trials" concerning allegations unrelated to case increases danger of jury confusion and speculation).

The Court concludes the reports are irrelevant and improper impeachment absent the Government or M.B.'s testimony opening the door to allow Broncheau to use a report for purpose of impeachment. Conceivably, the door may be opened on a limited number of factual issues addressed in the reports. For example, if M.B. were to deny being present at Fisher's residence after the alleged incident on September 4, 2025, or to deny sleeping on Fisher's couch after that date, the door would be opened to impeach M.B. about the issue because some of the reports indicate M.B. was at Fisher's home after Broncheau's alleged conduct. Even then, however, the report itself would not be admissible. Fed. R. Evid. 608(b) (barring extrinsic evidence to prove specific instances of conduct attacking truthfulness). Rather, it would still be unduly prejudicial, extrinsic evidence and inadmissible. Fed. R. Evid. 403, 608(b). Accordingly, the Court provisionally grants the Government's motion to exclude the incident and call detail reports and to preclude Broncheau from using them to impeach M.B., absent a specific evidentiary basis for doing so.

**B.      Admissibility of Forensic Interview of M.B.**

**1. Admissibility under Rule 801(d)(1)(B)**

The Government seeks a pretrial ruling on the admissibility of two videos of M.B.'s post-incident forensic interview (ECF No. 56). It argues that if Broncheau impeaches M.B.'s recollection on cross-examination, then the Government should be allowed to rehabilitate M.B.'s credibility on redirect examination with her own prior consistent statement—the videos of the forensic interview—under Rule 801. Rule 801(d)(1)(B) provides that if a declarant testifies and is subject to cross-examination, a prior consistent statement is not hearsay if it is offered: (1) "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying"; or (2) "to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(i), (ii).

Broncheau does not contest the Government's motion to admit the videos of M.B.'s forensic interview under Rule 801(d)(1)(B) on redirect examination if "M.B. testif[ies] consistently with the recording; and (2) the defense impeach[es] M.B." (ECF No. 63 at 2). Accordingly, the Court provisionally grants the Government's motion to admit the videos of the forensic interview (or relevant portions of them) on M.B.'s redirect if M.B. testifies consistently with the forensic interview and if cross-examination reveals credibility concerns which the forensic interview addresses. Fed. R. Evid. 801(d)(1)(B).

**2. Admissibility under Rule 807**

The Government also argues that regardless of M.B.'s testimony, the videos of the forensic interview should be admitted in its case in chief under Rule 807—the residual exception to the hearsay rule—because the videos are, or may be, the "most probative" evidence of what occurred on September 4, 2025 (ECF 56). In opposition, Broncheau asserts that if M.B. cannot

9

recall the events at issue on direct examination, that is a failure of proof which cannot be remedied by resorting to hearsay evidence.

The residual exception allows the admission of hearsay evidence, even if no exception under Rules 803 or 804 applies, and a hearsay statement will not be excluded if the following four conditions are met:

> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

*United States v. Wilkinson*, No. 1:14-CR-168-BLW-1, 2015 WL 6182466, at *11 (D. Idaho Oct. 21, 2015) (citing Fed. R. Ev. 807(a)). The Government disputes the first and third requirements—that the videos have guarantees of trustworthiness and that they are more probative than other evidence.

Trustworthiness is the "key substantive criteria for admission" under the residual hearsay exception. 30B Charles Alan Wright, Arthur R. Miller & Jeffrey Bellin, *Federal Practice and Procedure* § 7063 (2020 ed.). Additionally, the evidence must be more probative on the fact at issue than any other evidence the Government can obtain through reasonable efforts. Fed. R. Evid. 807(a). Notably, Rule 807 was amended in 2019 "to fix a number of problems that the courts" encountered in its application. *Grunig v. Johnson & Johnson*, No. 1:18-CV-00111-BLW, 2019 WL 6868956, at *5 (D. Idaho Dec. 16, 2019) (citing Fed. R. Evid. 2019 Advisory Committee Notes). Under the amended rule, a court must "proceed directly to a determination of whether the hearsay is supported by guarantees of trustworthiness." *Id.* "The amendment specifically requires the court to consider corroborating evidence in the trustworthiness inquiry." *Id.* Finally, the amended "rule provides that the focus for trustworthiness is on circumstantial

guarantees surrounding the making of the statement itself, as well as any independent evidence corroborating the statement." *Id*.

McCormick on Evidence, on which both parties rely, explains that courts have applied the residual exception most extensively in child sexual abuse cases. McCormick On Evid. § 324 (9th ed.), § 324 (addressing residual hearsay exception). Commonly considered factors include "the spontaneity and consistency of the statement, the general proposition that young children do not invent allegations of the type involved, the unusualness of explicit sexual knowledge by a young child, or use of childish terminology to describe sex." *Id*.; *see also Smith v. Davis*, Case No. 19-cv-08152-SI, 2020 WL 3488035, at *6 (N.D. Cal. June 26, 2020), *aff'd sub nom. Smith v. Broomfield*, 2023 WL 313210 (9th Cir. Jan. 19, 2023) (identifying "commonly considered" factors); *see also* 8 Handbook of Fed. Evid. § 807:1 (9th ed.) (addressing residual exception and providing examples). Rule 807 "exists to provide judges a 'fair degree of latitude' and 'flexibility' to admit statements that would otherwise be hearsay." *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010).

The Court has reviewed the two videos of the forensic interview which the Government provided with its reply brief. Based on that review and the surrounding circumstances, the Court considers whether the forensic interview provides adequate guarantees of trustworthiness as Rule 807 requires. The Court emphasizes that it focuses its analysis on the circumstantial guarantees surrounding the making of the statements and the independent corroborating evidence; the focus is not whether M.B.'s statements are credible.

Numerous factors support a finding that the videos of the forensic interview have guarantees of trustworthiness. These factors include that the forensic interview was conducted less than two weeks after the alleged incident; the interview was recorded; M.B.'s statements

11

were made in response to open-ended, nonleading questions; M.B. used unsophisticated language to explain the alleged abuse, indicating she was not coached; and M.B. had only met Broncheau a few times and had no apparent motive to fabricate the allegations. Indeed, even after examining all fifteen law enforcement reports related to M.B., the Court does not find any motive for M.B. to fabricate the incident, and Broncheau does not suggest any such motive.

On the other hand, some factors weigh against finding the videos are trustworthy: The statements were not made under oath; they were not spontaneous; and Broncheau did not have an opportunity to cross-examine M.B. at the time of the interview. Further, the fact that the interview was recorded, alone, is not a sufficient guarantee of trustworthiness. *United States v. Riggs*, No. 23-566, 2024 WL 3949101, at *2 (9th Cir. Aug. 27, 2024) ("[A] recording of a statement is not among the "rare[ ] and [ ] exceptional circumstances" necessary to invoke this exception. . . ."); *see also United States v. Lindsay*, 931 F.3d 852, 866 (9th Cir. 2019).

While a close call, the Court finds that M.B.'s statements during the forensic interview have sufficient guarantees of trustworthiness, and it can envision scenarios where portions of the interview could be used on direct examination if M.B. is unable or unwilling to testify. At the time of the alleged incident, M.B. was only thirteen; she is still a minor; and Broncheau will be present at trial for her trial testimony. As a result, M.B.'s testimony may be hesitant or inconsistent, or she may be unable to unwilling to testify. At this time, however, the Court does not know if these situations will arise. For this reason, the Court cannot find the videos are the most probative evidence the Government can reasonably obtain. Depending on M.B.'s testimony on direct examination, , the videos of the interview (or at least the relevant portions thereof) may well be the most probative evidence available. *See Wilkinson*, 2015 WL 6182466, at *12. Accordingly, the Court reserves ruling on this issue.

**C.      Admissibility of September 28, 2023 Incident Report under Rule 412**

In the Government's reply in support of its motion to admit the videos of the forensic interview, the Government notes that one guarantee of the videos' trustworthiness is "M.B. used age-appropriate terminology during her interview [which] indicat[es] a lack of coaching" (ECF No. 67 at 3). Based on this statement, Broncheau argues the Government "intends to elicit certain testimony" to support an argument that M.B.'s terminology in the interview is age appropriate; this argument is "a veiled effort to present [M.B.'s] chastity to the jury; and any "[s]uch questioning unfairly curries sympathy for a teenage witness by suggesting abstinence from sex" (ECF No. 70 at 4-5). Based on this argument, Broncheau moves under Rule 412 for an order allowing him to cross-examine M.B. "regarding prior sexual activity" (*id.* at 2).

Rule 412 generally bars evidence of an alleged victim's other sexual behavior or sexual predisposition. Fed. R. Evid. 412(a). Rule 412 serves two policy goals. First, it "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process." Wright & Miller, 23 Fed. Prac. & Proc. Evid. (2d ed.), § 5375.2. Second, by "affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." *Id*.

Broncheau relies on Rule 412's constitutional right exception, which provides that in a criminal case, the court may admit "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). A party seeking to offer evidence under Rule 412(b) must file a motion describing the evidence and the purpose for which it is to be offered; do so at least 14 days before trial; serve the motion on all parties; and notify the victim

or the victim's guardian or representative. Fed. R. Evid. 412(c)(1). "Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard." Fed. R. Evid. 412(c)(2).

The applicability of the constitutional right exception depends on the facts of each case, but "where evidence of the alleged victim's sexual history has substantial probative value for purposes of bias or motive impeachment, defendant's confrontation right is implicated." Wright & Miller, 23 Fed. Prac. & Proc. Evid. (2d ed.), § 5375.2; *see also United States v. A.S.*, 939 F.3d 1063 (10th Cir. 2019) ("[T]he class of cases in which evidence otherwise barred by the rape shield statute has been deemed to be constitutionally compelled is restricted to those which demonstrate a theory of witness bias or motive to lie."). Even then, in the context of Rule 412, "the confrontation clause does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct." 23 C.J.S. Criminal Procedure and Rights of Accused § 908; *see also LaJoie v. Thompson*, 217 F.3d 663, 673 (9th Cir. 2000) (holding evidence may still be constitutionally excluded as unduly prejudicial even if evidence's probative value substantially outweighs rape shield's purpose).

Here, Broncheau argues he has a constitutional right to cross-examine M.B. about one of the Idaho County Sheriff's Office incident reports, dated September 28, 2023, which suggests M.B.'s sexual activity (ECF No. 70-1). This report details a welfare check an officer made on M.B. about not attending school and "possible inappropriate photos and videos on [M.B.'s] phone" (*id.*). The officer spoke to M.B., who indicated "her ex-boyfriend [had] sent out a picture around the whole school" of her "'underneath a blanket with a guy . . . like by his body part'" (*id.*). The report further states that several days later, on October 10, M.B. disclosed to the reporting officer and another officer that "the picture was of her performing oral sex" (*id.*).

14

In response to Broncheau's motion, the Government clarifies that it "does not intend to argue that M.B. was unfamiliar with sex" and that it noted M.B.'s use of age-appropriate terminology to show it is "less likely that she was *coached*" not to show "she was a completely naïve thirteen-year-old" before the alleged incident (ECF No. 72 at 3). Further, the Government argues that "without any evidence that M.B. was chaste or unfamiliar with sex," Broncheau's Rule 412 evidence is completely irrelevant (*id.*).

The Court agrees with the Government. Absent the Government introducing evidence about M.B.'s familiarity with sexual activity, the suggestion in the incident report about M.B.'s sexual activity has no probative value, is irrelevant, is highly prejudicial, and violates Rule 412's general bar against offering evidence to prove a victim had engaged in other sexual behavior. Fed. R. Evid. 412(a)(1). Accordingly, Broncheau will not be allowed to cross-examine M.B. regarding her prior sexual conduct as referenced in the September 28, 2023, incident report or otherwise.[2]

The Government has repeatedly suggested M.B. may be entitled to the appointment of a guardian ad litem under 18 U.S.C. § 3509(h) to protect her interests, including "from shaming for not being chaste as a child" (ECF No. 72 at 4; *see also* ECF No. 66 at 8 ("If the defense of this offense is to embarrass and impugn the veracity of the minor child victim with extraneous reports that are inconclusive and without relevance, perhaps the Court must continue the trial to appoint a guardian ad litem. . . .")). The Court agrees that Broncheau's proposed strategy of proving a "pattern" of conduct by M.B. through unrelated law enforcement reports and cross-

---

[2]   As the Government notes, Broncheau failed to comply with Rule 412, which requires that he notify the victim or her guardian or representative that he seeks to offer evidence of her sexual activity. *See* Fed. R. Evid. 412(c)(1). Broncheau explains he is unable to notify M.B. because the Government has redacted her contact information from discovery materials. Notifying M.B. of the motion, however, is now unnecessary because the Court denies it.

examining her about prior sexual activity suggests an intention to defend this case by introducing character evidence to impugn M.B. The Court, however, does not intend to allow such a defense. For this reason and based on the current record, the Court declines to continue the trial—which is scheduled to begin in less than one-month—to appoint a guardian ad litem for M.B.

### ORDER

The Court hereby ORDERS:

(1) The Government's Motion in Limine Regarding Reports Involving Victim (ECF No. 48) is GRANTED and the reports at ECF Nos. 48-1 through 48-15 are provisionally excluded as evidence or for impeachment purposes;

(2) The Government's Motion in Limine to Admit Forensic Interview of Minor Victim (ECF No. 56) is RESERVED pending M.B.'s direct testimony in the Government's case-in-chief; and

(3) Broncheau's Motion to Introduce Evidence Under F.R.E. 412 (ECF No. 70) is DENIED.

DATED: May 14, 2025

Amanda K. Brailsford
U.S. District Court Judge